IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMY F. JONES,

    Plaintiff,

vs.                                Civ. No. 97-990 JP/DJS

KENNETH S. APFEL,
Commissioner of Social Security,[1]

    Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[2]

1.   Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing. The Court will review the Commissioner's

---

[1] Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted therefore, for Acting Commissioner John J. Callahan as the Defendant in this suit.

[2] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

1

decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. Williams v. Bowen, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.    Plaintiff applied for disability insurance benefits and supplemental security income benefits on October 20, 1994 alleging a disability since May 24, 1991 due to intestinal surgery followed by a stroke, a hereditary disease which causes blood clots, and loss of use of his right hand. Tr. 60, 64 and 102. The applications were denied initially and on reconsideration. Plaintiff requested and received a de novo review before an administrative law judge (ALJ). A hearing was held before the ALJ at which Plaintiff and his representative appeared and the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 25. The Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. 5. The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3.    Plaintiff was born on August 19, 1946 and has a high school education. Tr. 64 and 106. Plaintiff has previously worked as an operations officer for a defense contractor for fourteen years. Tr. 106.

**Issues**

4.  Plaintiff alleges that the ALJ made four errors. Specifically Plaintiff claims that: (1) the ALJ's residual functional capacity determination is not supported by substantial evidence and is contrary to law; (2) the ALJ improperly accorded substantial weight to the opinions of nonexamining doctors; (3) the ALJ's pain and credibility analysis is not supported by substantial evidence and is contrary to law; and (4) the ALJ erred when he failed to call upon the services of a vocational expert.

**The Standard of Review**

5.  The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly

applied. Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes him from returning to his past work. Once that showing is made, the burden shifts to the Commissioner to show: (1) that the Plaintiff, considering his age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.   To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §404.1520. At the first three levels of the sequential evaluation process, the claimant must show: (1) that he is not engaged in substantial gainful employment; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant cannot show that he has met or equaled a listing, he must show at step four that he is unable to perform work he had done in the past. At the fifth step, the

burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his age, education, and prior work experience. If a determination of disabled is found at any step, further inquiry is not required. 20 C.F.R. §404.1520.

8. Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In

that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

    10.   Essentially, Plaintiff is arguing that substantial evidence does not support the ALJ's determination that Plaintiff is able to perform a wide range of light work. To resolve this issue the Court must review the record to determine the effect, if any, that Plaintiff's impaired right extremity has on Plaintiff's ability to do light work. It is evident from the record that the ALJ's decision is in error.

    11.   The record is as follows: On August 29, 1994 Plaintiff had surgery to remove part of his intestine. His intestine was filled with blood clots. On September 10, 1994, Plaintiff went to the emergency room and was diagnosed as having a stroke. His right

hand and arm were paralyzed. He was admitted by Dr. Aday with an admission diagnosis of "neurologic event with flaccid right upper extremity." Tr. 187. He had "no motor function." Id. On September 12, 1994, Dr. Ashdown noted that "there has been virtually no return of motor function in right upper extremity." Tr. 173.

    12. Plaintiff began physical therapy for the loss of function in his right arm on September 29, 1994 and continued until December 29, 1994. There was some improvement. Tr. 299. In a functional capacity assessment his physical therapist, Mr. Pattillo, found that the left hand was the "primary worker." Tr. 228. He further noted that the "right hand was used primarily as a stabilizer with minimal or no fine motor activity." Id. Before his injury, he was right hand dominant." Tr. 221. When the Plaintiff was discharged from therapy he was "still demonstrating significant reduction in functional capabilities with his right hand..." Tr. 205. In an evaluation performed on September 28, 1994, Plaintiff's physical therapist found that Plaintiff had a grossly flaccid right wrist. Tr. 289. On February 16, 1995, Dr. Allan Richman, a general surgeon opined that Plaintiff's right arm is stable and his condition would not improve. Tr. 200.

    13. In review of the evidence above, it is clear from the record that Plaintiff has a non-exertional limitation. SSR 83-12 clearly states that in such instances application of the grids is not proper. When an individual has a partial lost of use of an

upper extremity generally the number of jobs available to a person is less than a full or ride range of light work. SSR 83-12. When the occupation basis is limited, vocational expert testimony is required. Trimiar v. Sullivan, 966 F.2d 1326 (10th Cir. 1992). Failure to obtain vocation expert testimony requires a remand.

    14.  Further, the ALJ erred is not relying on the opinion of Plaintiff's treating physician, Dr. Aday.  His opinion must be given substantial weight unless good cause is shown to disregard it.  Goatcher v. Department of Health & Human Services, 52 F.2d 288, 289 (10th Cir. 1995). The ALJ, in his decision said that Dr. Aday's finding of loss of function in Plaintiff's right upper extremity and loss of motor function is not supported by the functional capacity evaluation by Mr. Patillo.  Tr. 18-20. Contrary to the ALJ's decision, Mr. Patillo specifically found that Plaintiff had no motor function in his right upper extremity.  The ALJ's statement is clear error.  Further, as shown above, the opinion of Dr. Aday is supported by his findings and other evidence in the record. The ALJ did not show good cause to disregard the opinion of Plaintiff's treating physician.

    15.  The ALJ's credibility determination was not in error.  It is clear from the decision that the ALJ did not base his conclusion solely on the fact that his complaints were out of proportion to the medical findings.  The ALJ's decision specifically stated that there were other factors to consider and cited Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  The ALJ considered in detail

Plaintiff's activities of daily living and location, duration, frequency and intensity of pain.  He further considered Plaintiff's medication and treatment.  Tr. 22-23.  In particular the ALJ noted that Plaintiff's pain was only precipitated by lifting heavy weights above limits specified in the functional capacity evaluation.  Tr. 22.  In addition, the ALJ correctly noted that the Plaintiff took Coumadin which is not a pain medication but is an anticoagulant.  The only other treatment Plaintiff received was physical therapy.  The ALJ further noted that the pain was not constant and unremitting and that Plaintiff took walks and his prescribed course of physical therapy and exercise. He noted there was no longitudinal medical history for treatment of disabling pain.

### Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be granted consistent with the findings in this recommended disposition.

_____
Don J. Svet
**UNITED   STATES   MAGISTRATE   JUDGE**